Cole *v.* Inhabitants of Cheshire.

DANIEL D. COLE *vs.* INHABITANTS OF CHESHIRE.

A., an inhabitant of the town of C., on the 27th of April 1851 went with his horse and trunks to the house of B. in the town of L., and B. agreed to board him and keep his horse. In an action brought by A. to recover back a tax assessed on him in C. on the first of May ensuing, it was held that, for the purpose of showing that he had changed his domicil before that day, evidence was admissible of his declarations made to B. at L. in February preceding, during a negotiation about coming to board with B., that he intended to come and live with B. in April, and not to return to C.; and also of the fact that A. was chosen and served as a surveyor of highways in L. in 1853, after the action was brought. And the presiding judge having refused to allow one of the assessors of C., called as a witness by A., to testify that A. in April 1851 gave him notice that he was going to remove from C. before the 1st of May; but having allowed him to testify on cross examination that he did not at a particular interview acknowledge to A. that he had given him such notice; it was held, that this rejection and admission of evidence were both erroneous; and that the subsequent admission of evidence to contradict the testimony of the assessor as to his own acknowledgment to A. was no ground for setting aside a verdict for the plaintiff

ACTION OF CONTRACT, commenced on the 13th of December 1852, to recover back the sum of $14.64 paid by the plaintiff, under protest, to the defendants, for a tax assessed by them in 1851 upon the plaintiff's poll and personal estate.

At the trial in the court of common pleas, before *Bishop,* J. the main question submitted to the jury was, whether the plaintiff's residence was in Cheshire on the 1st of May 1851. There was evidence that on the 27th of April 1851 the plaintiff went with his trunks and horse from Cheshire, where his father lived, to the house of Harvey Chase in Lanesborough, and that Chase then made a bargain with the plaintiff to board him and keep his horse. The plaintiff offered to prove by Chase that in February 1851 the plaintiff said to him that he would like to come and live with him one year, and make his home with him, and that he did not intend to stay with his father any longer, after his time was out in April; and that Chase agreed to receive him as a boarder. The defendants objected to the competency of this evidence, on the ground that the plaintiff could not be allowed to prove his own declarations, made so long before the time of his going to Chase's house to board. But the judge overruled the objection, and admitted the evidence; and Chase testified to the facts above stated; and also testified, the defendants still objecting, that at that time he told the plaintiff that if he thought he could live with him, he might come and live with him if he liked; and that in April of the same year he again saw the plaintiff in Cheshire, and the plaintiff said to him that he should depend upon coming down there to live with him, and to make it his home, and that Chase replied that he could come.

The plaintiff also, against the objection of the defendants, proved that he was chosen and served as a surveyor of highways in Lanesborough in 1853, and gave in evidence the tax bills made out and delivered to him by the assessors of that town.

The plaintiff called Luther H. Brown, one of the assessors of Cheshire in 1851, and proposed to prove by him that in April 1851 the plaintiff gave him notice that he was going to remove from Cheshire before the first of May; but the evidence was objected to by the defendants, and rejected by the judge. Brown

upon cross examination by the defendants, testified that, at a particular interview with the plaintiff, he did not acknowledge to the plaintiff that the plaintiff had given him such notice. The plaintiff then, for the purpose of showing that Brown was mistaken, called two witnesses, who testified, the defendants objecting, that they were present at the interview testified to by Brown, and that Brown did then acknowledge that the plaintiff had given him notice that he was going to move or change his residence from Cheshire to Lanesborough.

The jury, under the instructions of the judge, returned a special verdict that the plaintiff, on the 1st of May 1851, was an inhabitant of Lanesborough, and also a general verdict for the plaintiff. The defendants alleged exceptions to the rulings above stated, as well as to others not material to be reported.

*J. Rockwell & H. S. Briggs,* for the defendants, cited 1 Greenl. Ev. § 108; *Merrill* v. *Sawyer,* 8 Pick. 397; *Salem* v. *Lynn,* 13 Met. 544; *Corinth* v. *Lincoln,* 34 Maine, 310; *Bangor* v. *Brunswick,* 27 Maine, 351; and *Ladd* v. *Abel,* 18 Conn. 513, to the point that the declarations made by the plaintiff were inadmissible in evidence as part of the *res gestæ;* and *Thorndike* v. *Boston,* 1 Met. 242; *Allen* v. *Duncan,* 11 Pick. 308; *Bridge* v. *Eggleston,* 14 Mass. 245; and 1 Greenl. Ev. § 102, to the point that the evidence of the plaintiff's being chosen and acting as surveyor of highways in Lanesborough in 1853 was improperly admitted, because it was of acts done after the controversy had commenced.

*I. Sumner & H. L. Dawes,* for the plaintiff, cited 1 Stark. Ev. (4th Amer. ed.) 17; 1 Greenl. Ev. § 53; 3 Greenl. Ev. § 15; *Jennison* v. *Hapgood,* 10 Pick. 77; *Richmond* v. *Vassalborough,* 5 Greenl. 396; 4 Cow. 516, *note; Thorndike* v. *Boston,* 1 Met. 242; *Kilburn* v. *Bennett,* 3 Met. 199; *West Boylston* v. *Sterling,* 17 Pick. 128; *Abington* v. *North Bridgewater,* 23 Pick. 170.

THOMAS, J. This is an action of contract to recover money paid the defendants for taxes, which the plaintiff says were illegally assessed, and which he paid under protest.

The question really at issue between the parties and upon which the case was determined was one of domicil, whether the

plaintiff on the first day of May 1851 was an inhabitant of Cheshire, and so liable to taxation in that town. He had been an inhabitant of Cheshire to April 27th 1851, and that domicil continued till he had acquired a new one. He averred that he had acquired such new domicil in Lanesborough. To establish this, he offered evidence to prove, first, a residence *de facto* in Lanesborough on the first of May 1851, and secondly, that he was there with the intent of making it his home or place of abode.

It was not difficult to prove that he was in Lanesborough before the first of May, that he came there with his horse and trunks, and made a contract for board and lodging. But the effect of these acts depended upon the intent and purpose with which they were done. If that intent and purpose were to work on the farm of Chase during the summer and autumn, and return to his father's house and home the ensuing winter, the facts proved would avail the plaintiff nothing. Qualified by such intent and purpose, they were perfectly consistent with the intention of retaining his domicil in Cheshire; they would not only fail to show a change of domicil, but they would exclude the conclusion. The plaintiff must prove that he left Cheshire with the intent of abandoning his old domicil and of acquiring a new one. That intent is manifested by what he does, and by what he says when doing, and sometimes as significantly by what he omits to do or to say.

The plaintiff undertook to show, that before he actually went to Lanesborough to reside, he had the purpose of leaving Cheshire, and that he had a negotiation with Chase, with the view of going to live with him, and which finally resulted in his so doing. In this negotiation he stated that it was his purpose not to live with his father after his time was out in April. This negotiation, with the declaration of purpose and intent, which not so much accompanied, as made part of it, was a fact competent to be proved. Whether the negotiation was successful, whether it ripened into a contract or not, might affect the weight, but not the competency of the evidence. Such declarations are, within the strictest rule, part of the *res gestæ*, qualifying and giving character to the principal thing done.

The sum of the whole matter simply is, that, to prove his intent to leave his old domicil, the plaintiff offered and was permitted to show that he had been in negotiation for a new one, with the avowed purpose of abandoning the old.   It is open, ot course, to the defendants, to show that the whole thing is collusive and a sham ; but if real and in good faith, it furnishes the kind of evidence of which the case is, in its nature, susceptible, and which, uncontrolled, is satisfactory.

It was competent for the plaintiff, with a view to show that the purpose he had formed of abandoning his domicil in Cheshire had been carried into effect, to prove that his domicil still continued in Lanesborough, and to exclude any inference that he had gone there for a temporary object, and with the intent to return after that object should have been attained.   To this end he might show that he was a highway surveyor in Lanesborough, or had engaged in any pursuit or calling indicating the design and purpose of making Lanesborough a place of permanent residence.

The only serious difficulty presented by the bill of exceptions grows out of the admission of the testimony of Luther H. Brown.   It is important to observe in what way the question of its admission arose.   The plaintiff offered to prove by Brown, who was one of the assessors of Cheshire in 1851, that in April of that year the plaintiff gave Brown notice that he was going to remove from Cheshire before the first of May.   Upon objection made by the defendants, the evidence was rejected, inadvertently, perhaps, after the decision of this court in *Kilburn* v. *Bennett*, 3 Met. 199.   Upon cross examination of the witness by the defendants, he was permitted to testify, not that the plaintiff did or did not give him such notice, but that he, the witness, did not, in a certain interview with the plaintiff, acknowledge that the plaintiff had given him notice that he was going to remove from Cheshire to Lanesborough.   After a witness had been excluded from testifying to a fact, to permit him to testify what he had or had not said about the fact in the country, was certainly erroneous.   The evidence was inadmissible, and was calculated to injure the plaintiff's cause.   To meet it, the plain-

tiff offered and was permitted to show that Brown was mistaken in this statement, and that he did acknowledge, in the interview with the plaintiff, that the plaintiff had given him notice that he was going to move or change his residence from Cheshire to Lanesborough.

If this is all irregular, we do not see that the defendants have any just ground of complaint. They offered evidence to show, that one of the assessors did not make a certain declaration in the country. The plaintiff was permitted to offer evidence that he did. · We are not to presume that the statement by the witnesses, that Brown had made such acknowledgment, was used as independent proof of the fact of such notice; and the result only is that evidence was inadvertently admitted, upon both sides, upon a matter unimportant and immaterial to the issue. We cannot disturb the verdict on this ground. The one error neutralizes the other.                    *Exceptions overruled.*